1

2

3

4

5

6              UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8

9

10    JAZWARES, LLC,

11              Plaintiff,                    No.  C 22-00094 WHA

12         v.

13    EMMANUEL JOSE PEREZ,                    **ORDER RE CIVIL CONTEMPT
                                              AND SANCTIONS**
14              Defendant.

15    _____

16

17         In this intellectual property infringement and unfair competition action, plaintiff seeks an

18    order finding defendant in civil contempt and consequential monetary sanctions.  For the

19    reasons that follow, the motion is **GRANTED IN PART**.

20         This lawsuit is about "action figures."  Plaintiff Jazwares, LLC is a toy company.  One of

21    its most popular products is a line of action figures based on the names and images of

22    professional wrestlers from All Elite Wrestling (AEW).  These figures are allegedly collectible,

23    and often come in limited edition runs as small as 500 to boost their popularity.  All in all, the

24    AEW figures generate millions of dollars annually for Jazwares (Mitchell Decl. ¶¶ 3, 19, Dkt.

25    No. 5-2).

26         Defendant Emmanuel Jose Perez maintains an account on the social media platform

27    Instagram with the handle "Prince Unmatched."  Jazwares became aware sometime in mid-

28    2021 that Perez was posting photos of future products and prototypes from the AEW line of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    action figures.  Jazwares could tell that many of Perez's posts depicted prototype AEW figures

2    because they were yet to be released, lacked painted hair and facial features, or had an "x"

3    somewhere on the figure to indicate it was a final engineering pilot (FEP).  Somehow, Perez —

4    who has never worked for Jazwares — was getting his hands on these prototypes and pre-

5    release figures via an unnamed source, ostensibly to resell them.  (*id.*  ¶¶ 4–9).

6        In June 2021, a Jazwares vice president took it upon himself to take action, and

7    commented on one of the photos, stating "Purchasing or selling prototypes = stolen property.

8    Think twice. . ." (*ibid.*).  Three months later, on September 29, Jazwares sent Perez an official

9    cease-and-desist email (*id.* Exh. A).  Perez responded by including "#FUCKJAZWARES" in

10   his Instagram bio.  Jazwares sent a further cease and desist on October 1.  Perez continued to

11   troll Jazwares in response, suggesting Jazwares "try eBay" and publishing a mock press release

12   regarding the cease-and-desists.  Adding more (alleged) injury to insult, Perez leaked

13   information on Jazwares' upcoming partnership with Upper Deck and their plan to include

14   trading cards with Jazwares' action figure packaging.  This caused Jazwares to revise its

15   marketing strategy (*id.* at ¶¶ 10–14, 18).  Jazwares filed suit on January 6, 2022.

16       In tandem with its complaint, Jazwares moved for a temporary restraining order.  An

17   order set a hearing for the TRO for January 27 and stated that Jazwares must serve a copy of

18   the summons, complaint, and application for injunctive relief upon Perez by January 13.

19   Jazwares purportedly did so.  Indeed, we know Perez received the summons because he posted

20   a photo of it on social media (Dkt. Nos. 12, 17).  Despite this, Perez did not attend the January

21   27 hearing.  An order then granted Jazwares' motion for a TRO, expedited Perez's deposition

22   (scheduling it for February 10), and set a February 24 hearing for Perez to show cause why a

23   preliminary injunction should not issue (Dkt. No. 19).  Jazwares formally served a copy of this

24   order on Perez as well (Dkt. No. 22).

25       Perez was a no-show for his deposition.  He did, however, make two further social media

26   posts online that violated the terms of the TRO.  Consequently, a February 24 order entered a

27   preliminary injunction against Perez (Dkt. No. 28).  Perez evaded personal service of the

28   preliminary injunction order (although the documents were also provided by mail and Perez

2

1  acknowledged receiving a courtesy copy via email) (Dkt. No. 30).  At a March 16 hearing,

2  which Perez also did not attend, counsel and the Court discussed the possibility that Perez be

3  held in custody until completion of his deposition.  Counsel was instructed to send a final

4  email to Perez alerting him that such an eventuality may take place (Dkt. No. 32).  Perez

5  finally sat for a deposition on March 29 (Dkt. No. 37).  No suggestion is made in the papers

6  that Perez was untruthful.

7       With the deposition finally in the rear-view mirror, this order takes up Jazwares' request

8  to find Perez in civil contempt and for sanctions in the amount of $7,413.61 for the fees and

9  costs its counsel incurred in preparing for the deposition where Perez was a no-show.

10      Rule 37(b)(1) provides:  "If the court where the discovery is taken orders a deponent to

11  be sworn or to answer a question and the deponent fails to obey, the failure may be treated as

12  contempt of court."  Further, under Rule 37(b)(2)(A), if a party fails to obey an order to

13  provide discovery, the district court may treat that failure as contempt of court.  "Civil

14  contempt consists of a party's disobedience to a specific and definite court order by failure to

15  take all reasonable steps within the party's power to comply."  *United States v. DAS Corp.*, 18

16  F.4th 1032, 1039 (9th Cir. 2021) (citation and internal quotation marks omitted).

17      To demonstrate civil contempt, the movant must show through clear and convincing

18  evidence that the disobedient party:  (1) had violated the terms of the order in question; (2) the

19  conduct went beyond a technical violation that would be consistent with substantial

20  compliance; and (3) that the violation was not based on a good faith and reasonable

21  interpretation of the order.  *See ibid.*  Attorney's fees and costs are an appropriate remedy for a

22  civil contempt award.  *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir.

23  1992).

24      *First*, the January 27 order was specific and definite and there is no question that Perez

25  did not abide by it.  The January 27 order was crystal clear — it ordered "defendant appear for

26  his in-person deposition on February 10, 2022" (Dkt. No. 19 at 2).  The order imposed this

27  requirement so Jazwares could quickly locate the internal leak that was providing Perez with

28  unreleased AEW figures that he would resell and post about on social media.  Despite formal

United States District Court
Northern District of California

1  service of the order via process server, Perez did not appear on February 10 (Dkt. No. 22).

2  Moreover, Jazwares provided a courtesy copy of the January 27 order to Perez via email that

3  further explained the requirements of the order and other scheduling details (Dkt. No. 30-6).

4  Perez has not explained his lack of participation.

5      *Second*, Perez's failure to appear for his deposition on February 10 does not qualify as a

6  technical violation.  Now, Perez did eventually sit for his deposition on March 29,

7  approximately seven weeks after the court-ordered date.  This order finds, however, that this

8  does not render his initial failure to appear a technical violation.  Indeed, Perez thumbed his

9  nose at the process until alerted to the risk he might be held in federal custody until he

10  provided testimony.

11      *Third*, Perez's failure to appear does not qualify as a reasonable, good faith interpretation

12  of the order.  Rather, Perez decided to flaunt the order's requirements.  Consequently, Perez

13  violated the January 27 order.  Pursuant to Federal Rule of Civil Procedure 37(b), this order

14  HOLDS IN CIVIL CONTEMPT defendant Emmanuel Jose Perez.

15      Jazwares requests $6,460 in attorney's fees and $953.61 in costs (Ulin Decl.)  *First*,

16  finding the listed expenses reasonable, this order tentatively AWARDS $953.61 in costs.

17  *Second*, the lodestar for attorney's fees breaks down as follows: four billable hours prepping

18  for the deposition by Member Attorney John C. Ulin ($670 per hour); five hours preparing for

19  the deposition and four hours preparing the instant motion by Associate Attorney Eric Sefton

20  ($420 per hour).  Notably, the nine hours billed to preparing for defendant's deposition did not

21  go to waste — Jazwares' counsel did eventually depose Perez.  Counsel did not have to

22  reinvent the wheel and conduct all that preparation again for the March 29 deposition.

23  Consequently, this order tentatively AWARDS $2,680 in attorney's fees.  Any greater amount

24  would rank as excessive.   In sum, this order tentatively SANCTIONS Perez in the total amount

25  of **$3,633.61** ($953.61 plus $2,680).

26      To give defendant Perez a further opportunity to be heard on these issues, an in-person

27  hearing will be held on MAY 12, 2022, AT 11:00 A.M., in Courtroom 12, 450 Golden Gate

28  Avenue, San Francisco, CA 94102, at which time both sides may be heard on the tentative

1   ruling.  Jazwares must promptly serve this order by formal process and file the proof of service

2   by **APRIL 28**.

3        **IT IS SO ORDERED.**

4

5   Dated:  April 22, 2022.

6

7   

8   WILLIAM ALSUP
    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California